IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PINNACLE ARCHITECTURE, INC.**
*an Oregon Corporation*, **PETER BAER**
*an individual*, **MARK ROSSI**
*an individual*

            Plaintiffs,

    v.

**HISCOX, INC.** *a New York Corporation*,
**CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON-SYNDICATE
3624**, *Subscribing to Policy
ANE1756517.19, an unincorporated
association*,

            Defendants.

No. 3:20-cv-01922-HZ
OPINION & ORDER

Seth H. Row
Shanelle A. Honda
Miller Nash LLP
111 SW Fifth Avenue, Suite 3400
Portland, OR 97204

    Attorneys for Plaintiff

Aryn M. Seiler
Heather M. Jensen
Jordan H. Lewis
Kristen Dana Perkins
Lewis Brisbois Bisgaard & Smith LLP
888 SW Fifth Avenue, Suite 900
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Pinnacle Architecture, Inc. (Pinnacle) and individual Plaintiffs Peter Baer and Mark Rossi bring this action against Certain Underwriters at Lloyd's, London-Syndicate 36241.[1] Plaintiffs bring claims for breach of contract, breach of the covenant of good faith and fair dealing, and seek a declaratory judgment arising from an underlying claim made against Plaintiffs by Lifeways, Inc.

      Plaintiff moves for summary judgment on its declaratory judgment claim. Defendant moves for summary judgment on all claims against it. For the reasons that follow, the Court grants Plaintiffs' partial motion for summary judgment and denies Defendant's motion for summary judgment.

## BACKGROUND

### I.    Underlying Incident and Action

      Lifeways, Inc. (Lifeways) retained Plaintiffs to perform architecture services for a psychiatric hospital in Hermiston, Oregon. Row Decl. Ex. C at 78–79 (Amended Arbitration Demand), ECF 12. According to Lifeways' Complaint and Amended Arbitration Demand, in June 2014, based on Plaintiffs' initial design, Lifeways and its first contractor WC Construction established a guaranteed maximum price (GMP) for the hospital project. *Id.* at 79.

---

[1] Plaintiffs stipulated to Hiscox, Inc.'s dismissal from this action on December 17, 2020. ECF 25.

In August 2015, Lifeways and Plaintiffs executed a second supplement to their initial contract which required Plaintiffs to "[r]e-design floor plan to meet State of Oregon requirements for a Psychiatric Hospital, as defined by OARs [Oregon Administrative Rules]." *Id.* Plaintiffs' redesign allegedly required extensive changes to meet the OAR requirements for a psychiatric hospital. *Id.* Consequently, Lifeways and its general contractor increased the GMP to $4,356,964.00. *Id.* Despite the required changes, Plaintiffs allegedly "assured Lifeways that it would be able to obtain waivers from the Oregon Health Authority ("Authority") to address the failure of its revised design to comply with the OAR requirements." *Id.* The Authority ultimately rejected some waivers increasing the costs for the project. *Id.* at 79–80. Lifeways alleges that Plaintiffs' "incomplete, negligent, and defective design caused Lifeways to incur additional construction costs totaling $1,152,94 9.91 beyond the Revised GMP" and $50,643.00 in additional costs associated with "completing the Project in accordance with the OAR requirements." *Id.* at 80.[2]

Lifeways filed the underlying lawsuit against Plaintiffs in Umatilla County, Oregon and an Arbitration and Mediation Demand with the American Arbitration Associated in accordance with the arbitration provisions of the Lifeways-Pinnace Contract. *See* Perkins Decl. Ex. C (Underlying Complaint), ECF 21-3; Amended Arbitration Demand.

Lifeways brought breach of contract and negligence actions against Plaintiffs. *Id.* The counts are stated in the Amended Arbitration Demand as follows:

COUNT 1 (BREACH OF CONTRACT)
Under the Contract, Pinnacle agreed to "Re-design floor plan to meet State of Oregon requirements for a Psychiatric Hospital, as defined by OARs." In

---

[2] Defendant points out that the Amended Arbitration Demand is identical to the first Arbitration Demand but includes the word "negligence" in one place and excludes the words "under the contract" from the negligence count. Defendant, however, does not argue that the Court should not consider the Amended Arbitration Demand.

performing its services, Pinnacle breached the Contract and fell below the standard of care required by the Contract by, among other things, failing to design the Project to meet the design requirements of the State of Oregon, including the OAR requirements for a licensed hospital. Lifeways performed all of the acts required of it pursuant to the Contract, except as the same may have been waived, excused and/or prevented by the acts of Pinnacle. As a direct and proximate result of Pinnacle's breaches, Lifeways has been damaged in an amount to be proven during arbitration.

COUNT 2 (NEGLIGENCE)
Pinnacle owed a duty to Lifeways to perform the design services for the Project in accordance with the ordinary standard of care for a licensed architect. Pinnacle breached this duty by, among other things, failing to design the Project to meet the design requirements of the State of Oregon, including the OAR requirements for a licensed hospital. As a direct and proximate result of Pinnacle's negligence, Lifeways has been damaged in an amount to be proven during arbitration.

*Id.* at 80–81.

## II.    The Policy and Breach of Contract Exclusion

Defendant issued Plaintiffs a professional liability insurance policy (the Policy). Row Decl. Ex. A (Insurance Policy), ECF 12-1. The Policy includes a duty to defend Plaintiffs if the underlying claim is "covered." *Id.* at 42. The "Defense and settlement of claims" section contains several exclusions. *Id.* at 43. It includes an exclusion for breach of contract claims. *Id.* The breach of contract exclusion states:

> **We** will have no obligation to pay any sums under this Coverage Part, including any **damages** or **claim expenses**, for any **claim**: . . . based upon or arising out of any actual or alleged breach of any contract or agreement, or any liability of others that **you** assume under any contract or agreement; however, this exclusion will not apply to any liability **you** would have in the absence of the contract or agreement.

*Id.* (emphasis in original).

## III.    This Action

On May 13, 2020 Plaintiffs provided notice to Defendant that a claim had been made against it. Row Decl. ¶ 4. On July 30, 2020, Defendant responded to the notice stating its position that there was no coverage under the Policy for the allegations made

by Lifeways in the underlying Complaint and arbitration demand based on the Policy's breach of contract exclusion. Perkins Decl. Ex. F at 1, ECF 21-6. On September 10, 2020 Lifeways and Plaintiffs filed a stipulated Amended Arbitration Demand. On September 21, 2020, Defendant maintained its position that there was no coverage under the Policy for the allegations in the Amended Arbitration Demand. Perkins Decl. Ex. J, ECF 21-10.

On September 30, 2020, Plaintiffs filed suit against Hiscox, Inc. and Certain Underwriters at Lloyd's, London-Syndicate 3624 in Multnomah County Circuit Court. Not. of Removal at 2, ECF 1. On November 6, 2020 Defendant timely removed the action to federal court. *Id.* at 4. Plaintiffs move for summary judgment on their third claim for relief and seek a declaration that Defendant has a duty to defend Plaintiffs in the underlying breach of contract and negligence action brought by Lifeways. Defendant moves for summary judgment on all claims against it.

## STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    Declaratory Judgment

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Declaratory Judgment Act is at the discretion of the district court. *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). Thus, "[e]ven if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002). However, "[a] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Dizol*, 133 F.3d at 1223. When determining whether to retain jurisdiction in a properly filed declaratory-judgment action, the court "must make a sufficient record of its reasoning to enable appropriate appellate review." *Id.* at 1225.

There are three main factors for the court to consider when determining whether to exercise jurisdiction over a declaratory-judgment action (the "*Brillhart* factors" as set out in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)): (1) avoiding needless determinations of state-law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. In addition to the established *Brillhart* factors, the district court must "balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

## DISCUSSION

### I.    Whether Declaratory Judgment is Appropriate

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Whether Defendant has a duty to defend Plaintiff in the underlying action presents a substantial controversy between the parties. As to the first *Brillhart* factor, resolving the duty to defend claim will not require needless determinations of a state law issue. Under Oregon law, a court generally resolves the issue of an insurer's duty to defend by analyzing only two documents: the insurance policy and the operative complaint in the underlying liability action. *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 396 (2003). "For this reason, duty to defend claims generally do not raise the same *Brillhart* concerns as duty to indemnify claims." *Century Sur. Co. v. Lopez*, No. 3:16-CV-00571-HZ, 2016 WL 4216782, at *2 (D. Or. Aug. 9, 2016).

On the second *Brillhart* factor, there is no evidence that the parties filed a declaratory judgment action as a means of forum shopping. The third *Brillhart* factor is of no consequence here because Defendant removed the entire action to federal court. There is no pending state action involving the same coverage issue and parties. Neither party argues that the Court should

not entertain this action. Weighing these factors, the Court exercises its discretion to consider the declaratory judgment action.

## II.    This Action

Plaintiffs ask this Court to grant partial summary judgment declaring that Defendant has a duty to defend it in the underlying lawsuit and arbitration action. Defendant argues that the underlying action is not a covered claim under the Policy because of the breach of contract exclusion (the Exclusion). The primary question then, is whether Defendant is obligated to defend Plaintiffs against Lifeways's allegations in the underlying action or whether the Exclusion applies and relieves Defendant of its duty to defend Plaintiffs under the Policy. Plaintiffs argue that even if the Exclusion applies, the exception to the Exclusion renders the underlying action a covered claim.

Oregon law governs this Court's construction of the Policy and Defendant's duty to defend. *Larson Const. Co. v. Or. Auto. Ins. Co.*, 450 F.2d 1193, 1195 (9th Cir. 1971); *Allstate Ins. Co. v. Morgan*, 123 F. Supp. 3d 1266, 1272 (D. Or. 2015). Under Oregon law, "[a]n insurer has a duty to defend if the claimant can recover against the insured under the allegations of the complaint on any basis for which the policy affords coverage." *Falkenstein's Meat Co. v. Md. Cas. Co*, 91 Or. App. 276, 279 (1988).

"Whether an insurer has a duty to defend presents a question of law." *Drake v. Mut. of Enumclaw Ins. Co.*, 167 Or. App. 475, 478 (2000). "When determining whether an insurer has a duty to defend an insured, a court looks at only two documents: the complaint and the insurance policy." *Morgan*, 123 F. Supp. 3d at 1275. "Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could

impose liability for conduct covered by the policy." *Ledford v. Gutoski*, 319 Or. 397, 400 (1994) (citation omitted). Conversely, "[i]f the complaint does not contain allegations of covered conduct . . . then the insurer has no duty to defend." *Abrams*, 335 Or. at 400.

"The insured bears the burden of proving coverage while the insurer has the burden of proving exclusion from coverage." *Morgan*, 123 F. Supp. 3d at 1273 (citations omitted). The Court must construe exclusion clauses narrowly. *Am. Econ. Ins. Co. v. Hughes*, 121 Or. App. 183, 186 (1993). Further, any ambiguity in an exclusion clause is strictly construed against the insurer, who drafted the policy. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470 (1992).

The Exclusion at issue provides that there is no coverage for any claim "based upon or arising out of any actual or alleged breach of any contract or agreement, or any liability of others that you assume under any contract or agreement." Insurance Policy at 43. Defendant argues that the Exclusion applies because (1) all claims against Plaintiffs are based upon or arising out of the alleged breach of Plaintiffs' contract with Lifeways, and (2) that all damages sought by Lifeways are based on the alleged breach of contract. Defendant also argues that the exception to the Exclusion does not apply because there are no allegations against Plaintiffs in the underlying action for potential liability absent the contract.

"[T]he labels placed on counts in a complaint alone is not sufficient to determine the duty to defend . . . it is the 'conduct' alleged that is critical to the determination." *L & D of Oregon, Inc. v. Am. States Ins. Co.*, 171 Or. App. 17, 20 (2000). In the underlying action, Lifeways alleges that Plaintiffs agreed to provide additional services to "Re-design floor plan to meet State of Oregon requirements for a Psychiatric Hospital, as defined by OARs." Compl. ¶ 9;

Amended Arbitration Demand at 79. It also alleges that Plaintiffs' redesign "required extensive changes to meet the OAR requirements for a licensed hospital" and that Plaintiffs "assured Lifeways that it would be able to obtain waivers from the Oregon Health Authority (" Authority") to address the failure of its revised design to comply with the OAR requirements." Compl. ¶ 13; Amended Arbitration Demand at 79. It alleges that when Lifeways was unable to obtain waivers from the Authority, it incurred damages associated with meeting "the OAR requirements based on the waiver rejections." Compl. ¶ 15; Amended Arbitration Demand at 80. Lifeways alleges that Plaintiffs' "incomplete and defective design caused Lifeways" to incur these damages. Compl. ¶ 18; Amended Arbitration Demand at 80 (the Amended Arbitration Demand includes the word negligent, Plaintiffs' "incomplete, negligent and defective design").

Defendant argues the negligence claim arises out of the Lifeways-Pinnacle Contract because the second supplement to the contract expressly requires Plaintiffs to meet OAR design requirements. Oregon courts "broadly" interpret the term "arising out of" to mean "flowing from," "having its origin in," or with "a causal connection." *Ristine ex rel. Ristine v. Hartford Ins. Co. of Midwest*, 195 Or.App. 226 (2004) (internal quotation marks omitted). Defendant is correct that the Lifeways-Pinnacle Contract includes a specific obligation to meet OAR design requirements. But Defendant misses that Plaintiff would have owed Lifeways this, and other duties, even if the parties had not included this obligation in their contract.

Oregon law recognizes that "a tort action between parties to a contract can arise when the plaintiff's damages result from breach of an obligation that is independent of the terms of the contract, that is, an obligation that the law imposes on the defendant because of his or her relationship to the plaintiff, regardless of the terms of the contract between them." *Jones v. Emerald Pac. Homes, Inc.*, 188 Or. App. 471, 476 (2003) (citing *Conway v. Pacific University*,

324 Or. 231, 237 (1996)); *Securities–Intermountain v. Sunset Fuel*, 289 Or. 243, 259 (1980);

*Kisle v. St. Paul Fire & Marine Ins.*, 262 Or. 1, 6–7 (1972)). "The plaintiff's tort claim may exist

even if it is based on an obligation that the defendant assumes as an express or implied term of

the contract, so long as the obligation would exist even if it were not in the contract." *Id.*

(citations omitted).

      In Oregon, architects owe a professional duty of care to their clients that exists

independent of contractual obligations. *Conway, 324 Or.* at 239; *see also Onita Pac. Corp. v.*

*Trustees of Bronson*, 315 Or. 149, 161 (1992) ("Engineers and architects are among those who

may be subject to liability to those who employ (or are the intended beneficiaries of) their

services and who suffer losses caused by professional negligence.").

      Here, the allegations in the Complaint and Amended Arbitration Agreement, without

amendment, could impose liability under a tort or contract theory. As architects, Plaintiffs owed

Lifeways a professional duty of care independent of the contract. Although the parties'

relationship arises out of the contact, Plaintiffs' duty of care and potential liability does not arise

out of the contract but is imposed by law and exists because of the nature of the parties'

relationship.[3] Lifeways can clearly establish a breach of contract claim, but the allegations in the

complaint also support a negligence claim, that could be broader than the alleged breach of

contract.

//

---

[3]A standard of care expressed in administrative rules can also support extra-contractual
obligations. *Abraham v. T. Henry Const., Inc.*, 230 Or. App. 564, 572 (2009), *aff'd on other*
*grounds*, 350 Or. 29, 249 P.3d 534 (2011) (citing *Shahtout v. Emco Garbage Co.*, 298 Or. 598,
601 (1985) and *Eduardo v. Clatsop Community Resource*, 168 Or.App. 383, 391). The alleged
failure to comply with the OAR design guidelines could also provide a standard of care for the
underlying negligence claim.

Defendant argues that the claims arise out of the contract even if the Complaint alleges breaches of other duties. Defendant relies on *Mut. of Enumclaw Ins. Co. v. Jonas*, 35 F. App'x 556 (9th Cir. 2002) and *Oak Crest Const. Co. v. Austin Mut Ins. Co.*, 329 Or. 620 (1999) for this proposition.[4]

In *Mut. of Enumclaw Ins. Co.*, the court held that a claim fell within a breach of contract exclusion even though the complaint alleged a breach of contract and a violation of Or. Rev. Stat. § 646.461. 35 F. App'x at 558. The court reached this holding because ORS 646.461 "does not constitute a basis of the complaint that is independent of breach of contract" but rather, "the duty cited by the statute allegedly arose, according to the complaint, from contract." *Id.*

In *Oak Crest Const. Co.*, the court held that even though the conduct at issue was alleged as accidental, the claim arose from a breach of contract. 329 Or. 620 at 629. In reaching this holding, the court noted that "[h]ad the facts demonstrated that the claimed problem with the cabinets and woodwork was the result of that kind of breach [breach of a duty to act with due care], or that plaintiff might be liable to the owners in tort for other damage, that might have qualified as an 'accident' within the meaning of the commercial liability policy." *Id.*

These cases are distinguishable from the allegations here because they do not involve situations where the law requires a party to act with due care. The obligations at issue in these cases arose from the parties' contracts. Plaintiffs, as architects, were subject to a standard of care independent of the terms of the Lifeways-Pinnacle Contract. The allegations support a potential

---

[4] Defendant also relies on *Off. Depot Inc. v. AIG Specialty Ins. Co.*, No. 215CV02416SVWJPR, 2019 WL 4570011 (C.D. Cal. June 21, 2019), *aff'd*, 829 F. App'x 263 (9th Cir. 2020). *Office Depot* is inapt because it concerned a broader contract exclusion than the exclusion at issue here. That exclusion covered claims arising "indirectly" from "any contract or agreement." *Id.* at 5.

breach of that standard of care based on Plaintiffs alleged failure to comply with the OAR design requirements but also based on Plaintiffs' representations that it could obtain waivers from the Authority. Plaintiffs would have this liability, even if the parties had not executed the second supplemental agreement.

"An insurer has a duty to defend if the factual allegations of the complaint, without amendment, state a claim for any offense covered by the policy." *Marleau v. Truck Ins. Exch.,* 333 Or. 82, 91 (2001). The law is clear that even if the complaint contains allegations of conduct or damage excluded by an insurance policy, the insurer owes a duty to defend if the complaint also contains allegations for which there is coverage or which can be interpreted to fall within coverage. *Paxton–Mitchell Co. v. Royal Indem. Co.,* 279 Or. 607, 611 (1977) ("If the complaint contains some allegations of conduct or damage excluded from the policy but has other allegations which would fall within the policy coverage, the insurer has a duty to defend"). Here, Lifeways' allegations state a claim for negligence which the Policy covers. The Exclusion does not apply because the negligence claim is not "based upon or arising out of any actual or alleged breach of any contract or agreement." Defendant, therefore, owes Plaintiffs a duty to defend in the underlying action. The Court grants Plaintiffs summary judgment on its declaratory judgment claim and denies Defendant's cross-motion for summary judgment on this claim.

III.    **Remaining Claims**

Defendant moves for summary judgment on Plaintiffs remaining claims: breach of contract and breach of the implied covenant of good faith and fair dealing. In arguing these claims, Defendant relies on its position that it did not owe Plaintiffs a duty to defend in the underlying action. The Court finds that Defendant owes Plaintiffs a duty to defend in the underlying action and denies summary judgment as to these claims on that basis.

**CONCLUSION**

The Court grants Plaintiffs' partial motion for summary judgment and denies Defendant's cross-motion for summary judgment.


IT IS SO ORDERED.


DATED:_____June 12, 2021_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge